**Richard G. VERRI, et al.**

v.

**STATE AUTOMOBILE MUTUAL INSURANCE CO.**

**Civ. A. No. 82–0813P.**

United States District Court, D. Rhode Island.

March 23, 1984.

Robert P. Verri, Providence, R.I., for plaintiffs.

Anthony G. Iannuccillo, Providence, R.I., for defendant.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This action is based on the defendant insurance company's alleged bad faith in

settling and paying plaintiffs' claims. On December 29, 1979, the Rhode Island resident plaintiffs were traveling in an automobile insured under one of defendant's policies along Interstate 93 in Northfield, New Hampshire; at that time their auto was allegedly struck by a hit-and-run driver. The defendant, an Ohio corporation, employed a Rhode Island claims adjuster to evaluate the claim. This adjuster, acting as the agent for the Ohio company, later notified the plaintiffs that their claim had been denied. The plaintiffs continued to demand payment and finally, in keeping with the provisions of their insurance contract, submitted their claims to arbitration. As a result of the arbitration, which took place in Rhode Island, they were granted a damage award. After the defendant had not paid the arbitrator's award, the plaintiffs petitioned the Rhode Island Superior Court to confirm the same. The defendant's challenge to the award was unsuccessful both in the Superior Court and on appeal to the state Supreme Court. The plaintiffs then brought this action on December 28, 1982, filing a complaint. Service of process on defendant, however, was not accomplished until seven months later, on July 29, 1983.

Defendant has moved this Court to dismiss the complaint for lack of personal jurisdiction. It also contends the complaint should be dismissed pursuant to Fed.R. Civ.P. 41(b) because the complaint was not served within a reasonable amount of time.

■ The issue of personal jurisdiction in this case is a difficult one. The defendant is an Ohio corporation with its principal place of business in Columbus, Ohio. The named insured in this contract is Samuel Wallack of Shaker Heights, Ohio. The insured automobile was registered in Ohio. The defendant is not registered or licensed to do business, has never written *new* insurance business,[1] neither owns, rents, nor possesses any property, maintains no office, neither files tax returns nor pays tax-

es, does not advertise, maintains no bank or brokerage accounts, has no statutory registered agent for service of process, maintains no directory listings, and has no employees in Rhode Island. Finally, the insurance claim arose from an accident in New Hampshire.

Despite the paucity of defendant's contacts with Rhode Island before this claim, this Court finds that it has personal jurisdiction over the defendant for the purposes of this action.

The applicable Rhode Island jurisdictional statute, R.I.G.L. § 9–5–33, goes to the federal constitutional limit in holding foreign corporations amenable to suit in Rhode Island. R.I.G.L. § 9–5–33. *See Roger Williams General Hospital v. Fall River Trust Co.,* 423 A.2d 1384 (R.I.1981). In a case involving Puerto Rico's similar jurisdictional statute, which has also been interpreted to go to the federal constitutional limit, the United States Court of Appeals for the First Circuit found that the federal District Court for the District of Puerto Rico had jurisdiction over two foreign insurance underwriters, neither of which claimed to transact business, sell insurance, or maintain an office in Puerto Rico. *Puerto Rico v. The SS Zoe Colocotroni,* 628 F.2d 652, 667–70 (1st Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981). The District Court's jurisdiction in *The SS Zoe Colocotroni* was based on the facts that the defendant English insurance companies

plainly knew that vessels [they] insured would call on Puerto Rico from time to time, and [they] made no apparent effort to halt or limit this practice. In fact, by advertising the name of [their] local correspondent in San Juan, [they] affirmatively encouraged such commerce. This is not a case of a single isolated and unpreventable appearance of an insured vessel in Puerto Rican waters; the record shows that such appearances

---

**1.** Although the defendant alleges that it has never written *new* insurance in Rhode Island, it is silent as to whether it has renewed old contracts

of insurance to cover automobiles or people who moved to Rhode Island.

were a readily foreseeable, part of the normal course of business.

*Id.* at 669.

The First Circuit distinguished *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), on two grounds:

> First, this is not a case of mere foreseeability, without more, that a single insured vessel would wander into Puerto Rico by happenstance. Plaintiffs established that vessels insured by [defendants] frequented Puerto Rico regularly over a period of years, and that they were provided with insurance-related services there .... Second, the seller of a product such as the automobile in *Woodson* ordinarily has no control over where the buyer takes the product after it is sold. If the mere fortuity of the presence of the seller's product in another jurisdiction subjected the seller to suit in that forum, the seller "would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel." *Id.* [444 U.S.] at 296, 100 S.Ct. at 566. By contrast, an insurer such as [the defendants] has the power through its contracts of insurance meaningfully to influence the course taken by insured vessels. By limiting coverage to specified jurisdictions, [the defendants] could be reasonably certain [they] would not be haled into court in an undesired forum. In other words, an insurer is not at the mercy of the insured owner's unilateral choice of destination in the same way a seller of chattels is at the mercy of the buyer.

*The SS Zoe Colocotroni, supra,* at 669–70.

*See American & Foreign Insurance Association v. Commercial Insurance Co.,* 575 F.2d 980 (1st Cir.1978). The First Circuit noted that its result was

> further buttressed by the Supreme Court's occasional suggestions that the test for measuring minimum contacts for insurance companies may be somewhat less stringent than for other nonresident corporations because of the forum state's

public policy interest in promoting effective redress for injuries. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *cf. Hanson v. Denckla,* 357 U.S. 235, 252, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1957).

*The SS Zoe Colocotroni, supra,* at 670 n. 18.

Similarly, in *United States Fidelity and Guaranty Co. v. United Farm Bureau Mutual Insurance Co.,* 297 Pa.Super. 25, 443 A.2d 280 (1981), the Pennsylvania Superior Court found that it had personal jurisdiction over an Indiana insurance company because of an automobile insurance policy it had issued to an Indiana resident. Like Mr. Wallack's policy, the insurance contract in *U.S. Fidelity & Guaranty* provided coverage in all parts of the United States and Canada. The court stated that

> [w]hen appellant agreed to insure losses incurred in all states, it assumed an obligation that has an economic impact on those states.... Having agreed to insure losses incurred in all states, appellant cannot now be heard to claim that it was unforeseeable that its contract with [the named insured] would have consequences in Pennsylvania.
>
> ... [In addition, the] cause of action is based on the terms of the insurance contract which provides the connection between appellant and the Commonwealth. Finally, and we believe most fundamentally, the ... exercise of jurisdiction over this appellant is reasonable. Appellant chose to insure drivers against losses, accidents and occurrences in states other than Indiana. Given this obligation, it is reasonable to require it to be involved in the administration of the claims made by its insured drivers in other states.

*U.S. Fidelity & Guaranty, supra,* 443 A.2d at 283.

The court also found that the requirements of *World-Wide Volkswagen, supra,* had been satisfied:

> We find that by reason of the policy it issued to appellees, appellant had clear notice that it was subject to being in-

volved in suits in Pennsylvania. The policy anticipates that the insured and the company will cooperate in litigation. As a driver, [the insured] was subject to suit in any state into which he ventured. His insurer by agreeing to cover his losses incurred while operating his automobile and by requiring a cooperative effort in litigation was put on notice that it could be involved in litigation in Pennsylvania. The due process requirements have been satisfied in this case.

*U.S. Fidelity & Guaranty, supra,* 443 A.2d at 284.

As in *The SS Zoe Colocotroni* and *U.S. Fidelity & Guaranty,* both the locus of the accident and the forum for the litigation in this case are within the geographic area in which the insurance company agreed to insure the automobile. The policy states, on page 3, that it applies to "accidents, occurrences and loss during the policy period within the United States of America, its territories or possessions, or Canada, including loss to the automobile while being transported between ports thereof." The company also agreed to defend any suits against the insured payable out of the policy, "even if any of the allegations of the suit are boundless, false, or fraudulent . . . ." Wallack Policy at 1. State Automobile Mutual Insurance Company should have foreseen that automobiles it insured in Ohio would be driven to Rhode Island. The company could have limited its policy's geographic area to exclude Rhode Island just as it limited it to exclude Mexico.

Although *The SS Zoe Colocotroni* and *U.S. Fidelity & Guaranty* provide sufficient authority for this Court to assert jurisdiction over defendant, this Court has jurisdiction for two separate and independent reasons: the arbitration proceeding and the nature of this action.

In *Reed & Martin, Inc. v. Westinghouse Electric Corp.,* 439 F.2d 1268 (2d Cir.1971), the Second Circuit found consent to personal jurisdiction in the Southern District of New York existed when a defendant entered into a contract which stated that all disputes were to be "finally settled under

the arbitration rules of the American Arbitration Association" and that "[j]udgment upon an award may be entered in any court of competent jurisdiction." *Id.* at 1276. In *Reed & Martin,* the defendant had strenuously objected to the selection of New York City as the arbitration site. *Id.* at 1272.

The insurance contract at issue here contains an arbitration clause similar to that in *Reed & Martin.* The Wallack policy states

[i]f any person making claim under the Uninsured Motorists Coverage and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing thereunder, then, upon written demand of either the matter or matters upon which such person and the company do not agree shall be settled by arbitration *in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.* Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrator pursuant to this paragraph.

Wallack Policy at 3 (emphasis added). Therefore, the policy at issue also not only submits disputes to arbitration under the rules of the American Arbitration Association, but it also allows judgment to be entered on the award in any court having jurisdiction of the award. Therefore, the facts of this case fall squarely within the rubric of *Reed & Martin.*

Finally, this action is based on the alleged bad faith actions of defendant in *settling* plaintiffs' claims. All of these settlement activities either took place in, or had a substantial connection with, Rhode Island. Therefore personal jurisdiction exists over the defendant for the purposes of this action.

The defendant has also urged this Court to dismiss the complaint under Rule 41(b) because of the plaintiffs' delay in serving

the defendant. The complaint was filed on December 28, 1982. Service of process by mail was approved by the magistrate on January 10, 1983. The process, however, was then not mailed until July 29, 1983, and not received by defendant until August 2, 1983. Plaintiffs therefore waited about seven months before serving defendant.

■ Confusing this issue is the fact that after the complaint was filed but before it was served, Federal Rule of Civil Procedure 4(j) went into effect. Rule 4(j) provides that if service is not made within 120 days of filing the complaint and the plaintiff cannot show "good cause" for the delay, then the action shall be dismissed. The amendment took effect on February 26, 1983, through a provision of a bill which also repealed an earlier bill which had delayed the effective date to October 1983. Federal Rules of Civil Procedure Amendments Act of 1982, Pub.L. No. 97–462, §§ 4–5, 96 Stat. 2527, 2530 (1983). In the instant case, not only was service made over 120 days after filing the complaint, but it also was made over 120 days after the effective date of Rule 4(j).

The bill itself does not indicate whether the limit should apply to a complaint filed before its effective date but on which service is not made until after its effective date. Neither the House nor the Senate submitted a report with the legislation; however, Congressman Edwards, a member of the House Judiciary Committee, did submit a section-by-section analysis of the bill to the Congressional Record which indicates that the new Rule 4 was not intended to apply to complaints which had been filed but not served before the effective date of the amendments. 128 Cong.Rec.H9848 (Dec. 15, 1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News 4434, 4447 ("The delayed effective date means that service of process issued before the effective date will be made in accordance with current [ (as of December 15, 1982) ] Rule 4."); D. Siegel, Practice Commentary on Amendment of Federal Rule 4 (Eff. Feb. 26, 1983) with Special Statute of Limitations Precautions, 96 F.R.D. 88, 93 (1983) (interpreting the new Rule 4 to apply only to summonses issued on or after February 26, 1982). Although statements by individual congressmen are generally not entitled to great weight when divining legislative intent, this Court adopts Congressman Edwards' analysis since it seems unduly harsh to dismiss a complaint for failure to comply with a rule not in existence when it was filed—especially absent a clear statement from Congress that it intended this result.

■ The Court therefore turns to the law on Rule 4 as it existed before the effective date of Rule 4(j). The defendant directs this Court's attention to *Caprio v. Fanning & Doorley Construction Co.*, 104 R.I. 197, 243 A.2d 738 (1968), and *Curtis v. Diversified Chemicals and Propellants Co.*, 440 A.2d 747 (R.I.1982), both of which interpret Rhode Island Rule of Civil Procedure 4, in urging the Court to dismiss the complaint for dilatory service. These cases are unpersuasive, however, because not only do they represent a state rule of procedure not binding on this Court under the *Erie* doctrine, but they also merely uphold the state trial courts' *discretion* to dismiss a complaint for tardy service—neither case requires it.

The better rule is that represented by *Lloyd v. Industrial Bio-Test Laboratories, Inc.*, 454 F.Supp. 807 (S.D.N.Y.1978), in which the court held that the test under the former Fed.R.Civ.P. 4 was "(1) whether plaintiff has exercised due diligence to perfect service and (2) whether the delay in service has substantially prejudiced defendants." *Id.* at 811 (citing *H. Alpers & Associates v. Omega Precision Hand Tools, Inc.*, 62 F.R.D. 408 (E.D.Pa.1974), and *Ashland Oil & Refining Co. v. Hooker Chemical Corp.*, 51 F.R.D. 512 (S.D.Ohio 1970)). This Court need not decide whether the plaintiffs' reason for the delay, which was their waiting for the end of the state court litigation confirming the arbitrator's award, is consistent with "due diligence" because the defendant has not alleged any prejudice caused by the delay.

Therefore, for the foregoing reasons, the Court orders that the defendant's motion to dismiss is hereby DENIED.