Ronald GORDON, Plaintiff,

v.

Nelson Bunker HUNT, William Herbert Hunt, Lamar Hunt, International Metals Investment Co., Ltd., Sheik Mohammet Aboud Al-Amoudi, Sheik Ali Bin Mussalem, Faisal Ben Abdullah Al Saoud, Mahmoud Fustok, Naji Robert Nahas, Bache Halsey Stuart Shields, Inc., Bache Group, Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., ContiCommodity Services, Inc., Conti-Capital Management, Inc., Conti-Capital Ltd., Norton Waltuch, Melvin Schnell, Gilion Financial, Inc., Banque Populaire Suisse, Advicorp Advisory and Financial Corporation, S.A., Commodity Exchange, Inc., the Board of Trade of the City of Chicago, Acli International Commodity Services, Inc., Litardex Traders, S.A., and John Does Nos. 1 Through 15, Defendants.

Philip and Dorothy KORWEK, Marty Finkelstein, William L. Cohn and James G. Williams, Plaintiffs,

v.

Nelson Bunker HUNT, William Herbert Hunt, Lamar Hunt, International Metals Investment Co., Ltd., Sheik Mohammet Aboud Al-Amoudi, Sheik Ali Bin Mussalem, Faisal Ben Abdullah Al Saoud, Mahmoud Fustok, Naji Robert Nahas, Bache Halsey Stuart Shields, Inc., Bache Group, Inc. (Prudential Bache Securities, Inc.), Merrill Lynch, Pierce, Fenner & Smith, Inc., ContiCommodity Services, Inc., Conti-Capital Management, Inc., Conti-Capital Ltd., Norton Waltuch, Melvin Schnell, Gilion Financial, Inc., Banque Populaire Suisse, Advicorp Advisory and Financial Corporation, S.A., Commodity Exchange, Inc., the Board of Trade of the City of Chicago, Donaldson, Lufkin & Jenrette Acli Futures, Inc., formerly, Acli International Commodity Services, Inc., Litardex Traders, S.A., Walter Goldschmidt, Continental Grain Co., Defendants.

Nos. 82 Civ. 1318 (MEL), 84 Civ. 7934 (MEL).

United States District Court, S.D. New York.

June 22, 1987.

314

Curtis, Mallet-Provost, Colt & Mosle, New York City, for defendant Mahmoud Fustok; Herbert Stoller, of counsel.

Deutsch and Frey, New York City, for plaintiffs; Herbert I. Deutsch, of counsel.

LASKER, District Judge.

Mahmoud Fustok is named as a defendant in *Gordon v. Hunt*, 82 Civ. 1318 (MEL) and *Korwek v. Hunt*, 84 Civ. 7934 (MEL), two related actions which concern the alleged manipulation of the silver and silver futures market in 1979. Fustok moves to dismiss both actions as to him without prejudice for untimely service under Fed.R. Civ.P. 4(j). Rule 4(j), which was added to

Rule 4 by statute in 1983, provides that service of the summons and complaint must be made upon a defendant within 120 days after the filing of the complaint, unless "good cause" can be shown for the failure to serve within that time. *Gordon* was filed on March 4, 1982. *Korwek* was filed on November 2, 1984. Fustok alleges that he was not served in either *Gordon* or *Korwek* until December 15, 1986.

Plaintiffs respond (1) that Fustok was timely served in *Gordon* in 1982 by mail pursuant to Fed.R.Civ.P. 4(i)(1)(D); (2) that there was good cause for untimely service in both actions (if untimely service is found in *Gordon*) because a) Fustok evaded service and b) plaintiffs made numerous diligent and good faith efforts to effect timely service on Fustok; and (3) that Fustok has waived his right to object to service. Fustok's motions to dismiss both actions as to him are granted.

*Facts*

A) *Fustok's Presence in the United States*

Fustok is a domiciliary of Saudi Arabia who maintains a business office in London, England. He alleges that since at least 1981 he has regularly visited the United States.[1] He states specifically that 1) he has spent the winter each year since at least 1981 in an apartment which he owns in Fort Lauderdale, Florida; 2) he has attended the annual thoroughbred sales in Keeneland, Kentucky each July since at least 1981; 3) he owned a house in Muttontown, New York "[u]ntil a year or so ago," which he "visited briefly once or twice a year;"[2] and 4) he visited New York City on several occasions in connection with litigation in cases related to the present action, and attended each day the trial before this court of *Fustok v. ContiCommodity Ser-*

*vices, Inc.,* 82 Civ. 1538(MEL), which began on February 18, 1986 and ended on March 17, 1986.

B) *Plaintiff's Attempts to Serve Fustok in* Gordon

The *Gordon* plaintiffs first made attempts to serve Fustok by mail at his London office pursuant to Rule 4(i)(1)(D). On May 28, 1982 and on September 13, 1982, the Clerk of the United States District Court for the Southern District of New York, at the *Gordon* plaintiffs' direction, mailed the *Gordon* summons and complaint to 98 Baker Street in London, England, which is Fustok's London business address. These mailings were made by registered mail, return receipt requested.[3] In neither case was a return receipt or other acknowledgment ever received by the Clerk of Court from these mailings. Kamal Moukarzel, who describes himself as Fustok's "personal accountant," and who "maintain[s] an office at ... 98 Baker Street, London ...," where Mr. Fustok also maintains an office,"[4] has submitted an affidavit stating that

> [n]o mail containing summonses, complaints or amended complaints in either the Gordon case or the Korwek case were ever received at the 98 Baker Street office. If such mail had been received, I would have known about it since there are only four or five people who work in this office and one of them would have been brought [sic] such mail to my attention.[5]

Fustok himself states that he "never received and never saw a summons or complaint or amended complaint in either the

---

1. *See* Verified Statement of Mahmoud Fustok ("Fustok Affidavit") (Feb. 25, 1987).

2. Fustok Affidavit at ¶ 5. However, in 1986 Fustok testified on deposition that he had sold his home in Long Island three years earlier. *See* Affidavit of Herbert I. Deutsch In Opposition to Motion to Dismiss by Defendant Mahmoud Fustok (Feb. 18, 1987) at ¶ 23 and Exhibit 3.

3. *See* Deutsch Affidavit at Exhibits 7 and 8 (February 18, 1987).

4. Affidavit of Kamal Moukarzel ("Moukarzel Affidavit") at ¶ 1 (Feb. 25, 1987).

5. Moukarzel Affidavit at ¶ 4.

Gordon case or the Korwek case until ... December 15, 1986." [6]

Second, in "late 1983 or early 1984" the *Gordon* plaintiffs attempted to serve Fustok at a horse farm in Louisville, Kentucky, in which Fustok allegedly had an interest, but the Louisville sheriff informed plaintiffs' counsel "that Fustok was not at the farm and therefore, service could not be effected." [7]

Third, plaintiffs allege that they attempted to serve Fustok at a house in Muttontown, New York in which Fustok was alleged to have an interest. However, the process server hired to make service reported that "the estate was gated off and he could not get access and no one would answer his ring from the gate." [8]

Finally, plaintiffs' counsel states that while he "learned that Fustok attended the races in Florida in the winter ... [he] was not able to ascertain an address for him there." [9]

### C) Plaintiffs' Attempts to Serve Fustok in Both Gordon and Korwek

After the *Korwek* action was filed on November 2, 1984, the *Korwek* plaintiffs did not attempt to serve Fustok by mail under Rule 4(i)(1)(D), because plaintiffs' counsel "considered it to be a useless act in view of the fact that [he] had twice caused service to be mailed in *Gordon* with no response." [10] However, plaintiffs' counsel did make several other attempts to serve Fustok in both *Gordon* and *Korwek*, after *Korwek* was filed.

First, plaintiffs attempted to serve Fustok in both *Gordon* and *Korwek* when Fustok was in New York for the trial before this court of *Fustok v. ContiCommodity Services, Inc.* in February–March, 1986. Plaintiffs claim that they were advised by a courthouse security guard that "service

was not permitted in the Courthouse under any circumstances, but that once Fustok was on the sidewalk outside service was proper." [11] Plaintiffs, however, have presented no evidence that such a rule prohibiting service within the courthouse actually exists, and no such rule has ever come to the court's attention. Plaintiffs also state that Fustok could never be found entering or exiting the courthouse during the month-long trial, and that he prevented them from finding him because when he left the courtroom he "would exit through a door, surrounded by his employees and bolt down the stairs." [12] Fustok, however, disputes this description of his behavior. He states that during the course of the trial he entered and left the courthouse daily through the front door of the courthouse, using the elevators to reach and leave the courtroom. He also states that he often had lunch in the courthouse cafeteria,[13] and there is no dispute that he did indeed lunch there on more than one occasion.

Second, on September 23, 1986 plaintiffs' counsel sent the process in *Gordon* and *Korwek* to the Senior Master of the Supreme Court of Judicature in the Royal Courts of Justice in London for service on Fustok at his London business office. However, on October 20, 1986, counsel was informed that the Senior Master could not serve Fustok at that address because he had been informed that "Mr. Fustok is only an occasional visitor to the address, and that his last visit was in June this year." [14]

Finally on December 15, 1986, over four years after the *Gordon* action was filed and over two years after the *Korwek* action was filed, Fustok was personally served in both actions when he attended a deposition in *Minpeco v. ContiCommodity*

---

6. Fustok Affidavit at ¶ 1.

7. Deutsch Affidavit at ¶ 22.

8. *Id.* at ¶ 23.

9. *Id.* at ¶ 24.

10. Deutsch Affidavit at ¶ 25.

11. *Id.* at ¶ 28.

12. *Id.* at ¶¶ 31–32.

13. Fustok Affidavit at ¶ 6.

14. Deutsch Affidavit at ¶ 34 and Exhibit 10.

*Service, Inc.,* 81 Civ. 7619 (MEL), in New York City.

### Discussion

#### A) *Service Under Rule 4(i)(1)(D)*

■ The *Gordon* plaintiffs' first argument is that Fustok was served in *Gordon* under Fed.R.Civ.P. 4(i)(1)(D) within the 120–day period required by Rule 4(j).

When service is authorized pursuant to Fed.R.Civ.P. 4(i)(1) upon a party who is "not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon th[at] party in a foreign country …," Rule 4(i)(1)(D) provides that such service may be accomplished "by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of court to the party to be served."

It is undisputed that the Clerk of Court, at the *Gordon* plaintiffs' direction, sent the *Gordon* summons and complaint to Fustok's London business office by registered mail twice, in May 1982 and September 1982; but that, however, no return receipt or any other form of acknowledgement of service was ever received by the Clerk of Court from these mailings.

The *Gordon* plaintiffs argue that service was complete upon the mailing of the summons and complaint, and hence that Fustok was timely served in 1982. They contend that the lack of any acknowledgement of service does not render service invalid because Fed.R.Civ.P. 4(g) provides that "[f]ailure to make proof of service does not affect the validity of the service."

Fustok answers that "the mere fact of mailing [does] not constitute valid service" under Rule 4(i)(1)(D)[15], because Fed.R.Civ.P. 4(i)(2) requires that when service is made pursuant to Rule 4(i)(1)(D) "proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court."

Plaintiffs' argument raises the question whether Rule 4(g)'s statement that failure to make proof of service does not invalidate service applies to service by mail in a foreign country pursuant to Rule 4(i)(1)(D), or put differently, whether service by mail under Rule 4(i)(1)(D) can be effective without any proof of service despite Rule 4(i)(2)'s requirement of evidence of delivery.

Nothing in the wording of Rule 4 itself excepts service under Rule 4(i)(1)(D) from Rule 4(g)'s statement that failure to make proof of service will not defeat service which is otherwise valid. Indeed, one commentator has stated that "[t]here is no reason to believe that proof of service under Rule 4(i)(2) is not controlled by the statement in Rule 4(g) that failure to make proof of service does not affect the validity of the service." 4 C. Wright & A. Miller, Federal Practice and Procedure § 1136 (2d ed. 1969).

However, for several reasons plaintiffs' attempts to serve Fustok pursuant to Rule 4(i)(1)(D) cannot be considered effective. First, the 1963 Advisory Committee Notes to Rule 4 state that "[t]he special provision for proof of service by mail is intended as an additional safeguard when that method is used," indicating the special importance of proof of service when service is made under Rule 4(i)(1)(D).

Second, in a number of cases construing Rule 4(i)(1)(D), courts have grappled with the issue of how much evidence of delivery is necessary to prove service under Rule 4(i)(1)(D) in the absence of a return receipt. *See, e.g., Trak Microcomputer Corp. v. Wearne Bros.,* 628 F.Supp. 1089, 1092 (N.D.Ill.1985) (markings on envelope returned to sender suggested that actual delivery of the complaint had been made); *Lumbard v. Shasha,* No. 84–0009 (S.D. N.Y. Sept. 21, 1984) [Available on WEST-LAW, DCT database] (evidence that foreign post office had received complaint and delivered it to correct address); *Puerto Rico Maritime Shipping Authority v. Almogy,* 510 F.Supp. 873, 879 (S.D.N.Y.1981) (evidence that defendant received complaint

**15.** Reply Memorandum in Support of Motion to Dismiss as to Defendant Mahmoud Fustok ("Fustok Reply Memorandum") at 3 (Feb. 25, 1987).

and forwarded it to counsel); *Bersch v. Drexel Firestone, Inc.*, 389 F.Supp. 446, 463 (S.D.N.Y.1974) (postmarks and other official markings on returned envelope enough to convince court that delivery had been made), *aff'd in part and rev'd in part on other grounds*, 519 F.2d 974 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). The care taken in these cases to establish that there was sufficient evidence of delivery strongly suggests that if there is *no* evidence of delivery, service should not be deemed to have been effected.

Third, and most important, even if service under Rule 4(i)(1)(D) may be deemed complete without evidence of delivery, it would still have to be concluded that service here was never perfected. In this case, not only is there no evidence of delivery, but Fustok has presented affirmative evidence of non-delivery. Fustok's accountant has sworn that service was never delivered to Fustok's London office, and that, if it had been, he would have known of it. Fustok himself has sworn that he did not receive service until he was personally served at his deposition in New York in December, 1986. Although the mailing of a notice pursuant to standard office procedure creates a presumption that notice was received, *see Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir.

1985); *United States v. Jack Cozza, Inc.*, 106 F.R.D. 264, 267 (S.D.N.Y.1985), here, Fustok has produced sufficient evidence to rebut that presumption.[16]

In sum, because there is no evidence of delivery of the *Gordon* process, and Fustok and his accountant have positively denied that the process was ever delivered, it cannot be concluded that Fustok was served by mail under Rule 4(i)(1)(D) in December, 1982.

### B) *Dismissal Under Rule 4(j)*

■ Fustok argues that because he was not served in either *Gordon* or *Korwek* within 120 days after the complaints in those actions were filed, both actions must be dismissed as to him. Plaintiffs respond first, that Fustok's "evasion of service" represents good cause for the delay in service, and second, that because plaintiffs "made a reasonable effort to serve defendant, the failure to serve within 120 days does not mandate dismissal."[17]

Fed.R.Civ.P. 4(j), which was added to the Federal Rules of Civil Procedure in 1983, states that:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf

---

16. In a case dealing with an analogous rule, *Morse v. Elmira Country Club*, 752 F.2d 35, 39–40 (2d Cir.1984), the court of appeals for this circuit held that service by mail under Rule 4(c)(2)(C)(ii) is complete and effective upon mailing, and that "service [under Rule 4(c)(2)(C)(ii) ] may be effective without a return [of acknowledgment of service]." The *Morse* court found that service of process was valid and complete within the statute of limitations period when the summons and complaint was properly mailed under Rule 4(c)(2)(C)(ii) within the required period, despite the fact that the acknowledgement of service was never returned. However, in *Morse* there was no indication that service had not been received, and the court was able to conclude that "[i]n the absence of any contrary indication we assume delivery in due course." *Id.* at 36 n. 2. Here, in contrast, both Fustok and his London accountant have stated that the *Gordon* service of process never arrived at the London office and never was received by Fustok.

17. Memorandum in Opposition To Motion By Fustok to Dismiss Under Fed.R.Civ.P. 4 ("Plaintiffs' Memorandum") at 5 (Feb. 18, 1987). Plaintiffs also argue that the 120–day limit of Rule 4(j) does not apply to Fustok because Fustok is not a resident of the United States. This argument is meritless. Rule 4(j) states that "[t]his subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule." However, this exception applies only to *service* in a foreign country, not to residence in a foreign country. The untimely service upon which this motion to dismiss is based did not take place "in a foreign country": it took place in New York City, when Fustok was personally served at a deposition in December, 1986. Hence the exception does not apply. *Cf. Montalbano v. Easco Hand Tools Inc.*, 766 F.2d 737, 740 (2d Cir.1985) (foreign country exception to the 120–day period for service does not apply where service found to be defective took place in United States).

such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice. . . .

The scope of the "good cause" exception to Rule 4(j) has not been defined by the Court of appeals for this circuit. Hence, we look for assistance first, to the history of Rule 4(j), and second, to discussions of the "good cause" exception by other courts.

Prior to the 1983 amendments to Rule 4 there was no time limit for the service of process. If a plaintiff delayed service, a defendant could move for dismissal for failure to prosecute under Fed.R.Civ.P. 41(b), and the plaintiff would be held to a flexible "due diligence" standard. A finding of lack of due diligence depended on two factors: first, whether the delay was "unreasonable" or "moderate or excusable," and second, if the delay fell into the latter category, whether the delay in service had caused "actual prejudice" to the defendant. *See Lyell Theater Corp. v. Loews Corp.*, 682 F.2d 37, 42–43 (2d Cir.1982); *Messenger v. United States*, 231 F.2d 328, 331 (2d Cir.1956).

Rule 4 was amended to include, *inter alia*, the 120–day service rule by the Federal Rules of Civil Procedure Amendments Act of 1982 ("FRCPAA"), a statute which became effective on February 26, 1983.[18] The sole legislative document which comments on the FRCPAA, a section-by-section analysis of the bill submitted by a member of the House Judiciary Committee,[19] does not discuss or define the new "good cause" exception to Rule 4(j) except to state that "[i]f the putative defendant moves to dismiss and the failure to effect service is due to that person's evasion of service, a court should not dismiss because the plaintiff has

'good cause' for not completing service." 1982 U.S. Code Cong. & Ad.News at 4446 n. 25; 96 F.R.D. at 122 n. 25. In the present case, as discussed below, there is no evidence that the defendant has evaded service.

Courts which have considered the definition and scope of the "good cause" exception to Rule 4(j) have relied, in varying degrees, upon the same factors which used to be relied upon in determining, under the unamended rule, whether a plaintiff who was tardy in service could establish "due diligence" to defeat a Rule 41(b) motion for dismissal to prosecute: the plaintiff's diligence and the prejudice to the defendant. *See Shuster v. Conley*, 107 F.R.D. 755, 757 (W.D.Pa.1985) ("Most courts have adopted the old diligence standard in determining when a party has shown good cause [under Rule 4(j)] . . . .").

The first factor which courts have considered in determining whether good cause exists for service outside the 120–day limit is whether the delay in service was "the result of mere inadvertence," or whether there has been a "reasonable effort" to effect service. *Geller v. Newell*, 602 F.Supp. 501, 502 (S.D.N.Y.1984). There is some support for this interpretation in the legislative history of the FRCPAA. The Judiciary Report which accompanied the bill states that:

the status of the plaintiff's cause of action turns upon the plaintiff's diligence. If the plaintiff has not been diligent, then the court will dismiss the action for failure to serve within 120 days. . . . If, on the other hand, the plaintiff has made reasonable efforts to effect service, then the plaintiff can move under Rule 6(b) to enlarge the time within which to serve or

---

**18.** The FRCPAA was approved on January 12, 1983 and took effect 45 days later. Pub.L. No. 97–462, § 4, 96 Stat. 2527, 2530 (1983).

**19.** The Act's legislative history is sparse: neither the House nor the Senate submitted a report with the legislation. Congressman Edwards of the House Committee on the Judiciary, did, however, submit a section-by-section analysis of the bill to the Congressional Record. 128 Cong.

Rec. No. 17, H9,884–9,856 (Dec. 15, 1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News 4434 *and* 96 F.R.D. 81 (1983). This report has been described as providing "the most extensive statement of background and intent on the amendment." Siegel, Practice Commentary of Amendment of Federal Rule 4 (Eff. Feb. 26, 1983) with Special Statute of Limitations Precautions, 96 F.R.D. 81 (1983) ("Siegel Commentary").

can oppose dismissal for failure to serve. A court would undoubtedly permit such a plaintiff additional time within which to effect service. Thus, a diligent plaintiff can preserve the cause of action. This result is consistent with the policy behind the time limit for service and with statutes of limitation, both of which are designed to encourage prompt movement of civil actions in the federal courts. 1982 U.S. Code Cong. & Ad.News at 4442; 96 F.R.D. at 120. This passage has been interpreted broadly as an indication that Congress intended that the complaint of a diligent plaintiff who has made reasonable efforts to effect service should survive a motion to dismiss. *See Geller*, 602 F.Supp. at 502 ("Where plaintiff has made a reasonable effort to serve defendant, Congress intended that the 120 day deadline be extended."); *Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 659 (D.Md.1986) ("Rule 4(j) leads this court to examine the reasonableness and diligence of plaintiff's efforts to serve process.").

However, it less clear where the line should be drawn between reasonable and "inadvertent" non-service. Clearly, a lawyer's failure to serve within the 120–day limit is "inadvertent" when it results from failure to remember to serve, *see, e.g., Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir.1985); *Coleman v. Greyhound Lines, Inc.*, 100 F.R.D. 476 (N.D.Ill.1984), or when the lawyer gives no reason at all for the delay, *see, e.g., Burks v. Griffith*, 100 F.R.D. 491, 492 (N.D.N.Y.1984).

What is less clear is whether the "good cause" exception covers the situation where the plaintiff has made one or more reasonable and good faith efforts at service within the 120–day limit but has been unsuccessful, either through his own mistake, or through adverse circumstances. Some courts have found good cause where there has been a good faith but unsuccessful effort at timely service but these have generally been cases where the ineffective service was promptly followed by effective service. In *Geller v. Newell*, 602 F.Supp. at 501, for instance, plaintiff had effected

service on a person who had been the defendant's agent but no longer was. After discovering the mistake, plaintiff made immediate efforts to locate the defendant and served him as soon as he was located, three months after the defective service and only fourteen days beyond the 120–day limit. The court denied the Rule 4(j) motion to dismiss, stating that "[t]he harsh sanction of Rule 4(j) is appropriate to those cases in which non-service was the result of mere inadvertence," but that, here, "plaintiff was diligent in his efforts to serve defendant and he did, in fact, complete service only 14 days after the deadline," 602 F.Supp. at 502. The court understandably stated that under these circumstances, there was "no difficulty concluding that plaintiff had good cause for the 14 day delay at issue here." *Id.* Similarly, in *Arroyo v. Wheat*, 102 F.R.D. 516, 518 (D.Nev.1984), the court, stating that "[i]t was not intended that Rule 4(j) would be enforced harshly," found good cause for failure to serve within 120–days because the defective service was the result of confusion over amendments in Rule 4, and effective service was made promptly after the ineffective service was attempted. *See also Federal Deposit Insurance Corp. v. Sims*, 100 F.R.D. 792, 797 (N.D.Ala.1984) (granting plaintiff additional time to serve defendant because "plaintiff's abortive efforts at obtaining service [were construed as] bona fide").

However, courts have been more reluctant to find good cause where a plaintiff's initial timely but ineffective attempt at service is followed by repeated, failed attempts to serve. In *Quann v. Edgewater*, for instance, the court concluded that where plaintiff was on notice that his timely attempt at service by mail was ineffective and his subsequent efforts to serve were both untimely and ineffective—and in fact service was apparently never effected—the case "boil[ed] down to inadvertence on the part of counsel." *Quann*, 112 F.R.D. at 662. *See also Norlock v. City of Garland*, 768 F.2d 654, 657 (5th Cir. 1985)(no "good cause" where single defective attempt at service never followed by

attempt to correct service); *United States v. Kenner General Contractors, Inc.*, 764 F.2d 707, 710 (9th Cir.1985)(no "good cause" where "counsel took some steps to effect service before the deadline, but the record shows the efforts to have been half-hearted at best"); *cf. Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir.1985)("the 120 day time limit imposed by Rule 4(j) seems therefore perfectly proper, especially since Easco has not exactly bent over backward to effect service") (dicta).

■ The second factor which was considered in a Rule 41(b) motion to dismiss for failure to prosecute based on untimely service—prejudice to the defendant—presents a more difficult question. Courts are divided on the issue whether lack of prejudice to the defendant should be considered as a factor in determining whether good cause exists for untimely service under the present Rule 4(j). At least one court has taken the position that because the amended Rule 4(j) on its face does not require a showing of prejudice on the part of the moving party, a showing of prejudice is irrelevant to a determination of good cause for tardy service. *See Quann*, 112 F.R.D. at 661; *see also* 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 4.46 at 4–433 n. 8 (2d ed. 1986)("Since the policy behind the 120–day limit is primarily 'to encourage prompt movements of civil actions in federal courts,' ... the absence of prejudice to the defendant would not appear to be a relevant consideration.") However, other courts, including two in this circuit, have considered lack of prejudice as a pertinent factor in determining whether good cause exists. *See, e.g., United States v. Jack Cozza, Inc.*, 106 F.R.D. 264, 268 (S.D.N.Y.1985); *Geller v. Newell*, 602 F.Supp. at 502; *Peters v. E.W. Bliss Co.*, 100 F.R.D. 341, 343 (E.D.Pa.1983). None of these decisions discusses the rationale for considering lack of prejudice as relevant to a determination of good cause. However, it would seem appropriate that a determination of "good cause", which is a legal term traditionally broadly defined, should take into account an equitable consideration such as hardship—or lack thereof—to the defendant. Accordingly, any lack of prejudice will be considered a relevant factor here.

■ Another factor which some courts have considered in determining whether good cause has been established is whether or not the plaintiff has moved under Fed.R. Civ.P. 6(b) for an enlargement of time in which to effect service. *See, e.g., Norlock v. City of Garland*, 768 F.2d 654, 658 (5th Cir.1985); *Quann*, 112 F.R.D. at 661 (citing cases). An application for enlargement of time in which to serve might well reflect a plaintiff's diligence in trying to effect service. However, failure to make such a motion certainly is not by itself fatal to a plaintiff's efforts to establish good cause. *See Geller*, 602 F.Supp. at 502 ("While it would be prudent for a plaintiff who will be unable to complete service within the statutory period to move for an enlargement of time under Rule 6(b) prior to the running of the 120 days, the failure to do so does not mandate dismissal under Rule 4(j).")

■ Finally, a factor which must be considered with regard to *Gordon* action only is that *Gordon* was filed on March 3, 1982, almost a year before the effective date of the FRCPAA, which was February 26, 1983. Neither Fustok nor plaintiffs has addressed the issue of whether Rule 4(j)'s 120–day service requirement should be applied to *Gordon*.

The FRCPAA provided that the amendments to Rule 4 would not become effective until forty-five days after enactment of the statute. The section-by-section analysis states that "[t]he delayed effective date means that service of process issued before the effective date will be made in accordance with current [as of Dec. 15, 1982] Rule 4," 1982 U.S. Code Cong. & Ad. News at 4447; 96 F.R.D. at 122–23 (1983), and that the purpose of this 45–day delay between the Rule 4 amendments becoming law and taking effect was to give the bench and bar "an opportunity to prepare to implement the changes made by the legislation," *id. See also* Siegel Commentary, 96

F.R.D. at 93. However, it is unclear whether this statement extends to Rule 4(j)'s 120–day service limit or applies only to the new methods of service added to Rule 4 by the FRCPAA. Courts which have addressed the issue of whether Rule 4(j)'s 120–day limit should apply to actions which were filed before the FRCPAA's effective date have reached differing conclusions. In *Verri v. State Automobile Mutual Insurance Co.*, 583 F.Supp. 302, 306 (D.R.I.1984), the court held that Rule 4(j)'s 120–day limit does not apply to such actions, because "it seems unduly harsh to dismiss a complaint for failure to comply with a rule not in existence when it was filed-especially absent a clear statement from Congress that it intended this result." *See also Baranski v. Serhant*, 602 F.Supp. 33, 35 (E.D.Ill.1985) (denying Rule 4(j) motion to dismiss on various grounds, including approval of *Verri* holding); *Peters v. E.W. Bliss Co.*, 100 F.R.D. 341, 342–43 (E.D.Pa.1983) (FRCPAA legislative history indicates that 120–day limit does not apply to actions filed before FRCPAA effective date); *cf. Coleman v. Holmes*, 789 F.2d 1206, 1207–08 (5th Cir.1986)(date of issuance of summons determines whether Rule 4(j) should be applied).

However, in *Cool v. Police Department of the City of Yonkers*, 40 F.Serv.2d 857, 859 (S.D.N.Y.1984), a court in this district reached the opposite conclusion, holding that:

> No basis exists for assuming that Congress' statement that "service of process issued before the effective date ... be made in accordance with current Rule 4" applies to Rule 4(j) at all. Rule 4(j) does not address the methods by which service "will be made." It merely establishes a 120–day period within which service in accordance with Rule 4 must be made unless good cause is shown for the delay. Furthermore, no practical purpose would be served by limiting the application of Rule 4(j) to complaints filed after the effective date. Unlike the provisions of new Rule 4 outlining manner of service, Rule 4(j) does not change the methods by which service is made. Enforcing its

time limitations would not cause any of the confusion or potential injustice that allowing service by a new method during the transition period would cause.

*See also Sanders v. Marshall*, 100 F.R.D. 480, 482 (W.D.Pa.1984) (dismissing action filed prior to FRCPAA effective date because service was not made within 120 days after that date).

The court of appeals for this Circuit has not yet addressed the issue of the applicability of Rule 4(j) to actions filed before the effective date of the FRCPAA. Despite the absence of such guidance, two points are clear. First, it is clear that the *Gordon* action cannot be dismissed for failure to serve within 120 days of the filing of the *Gordon* complaint, because the FRCPAA had not yet been enacted at that time, and no 120–day service limit existed. Second, however, it is equally clear that the *Gordon* plaintiffs' failure to serve Fustok until almost three years after the effective date of the amended Rule 4 outlasted any reasonable transition period between the old and the amended Rule 4. For these reasons, it is not unduly harsh to apply Rule 4(j) to the *Gordon* action, measuring the 120–day period from February 26, 1983, the effective date of the FRCPAA.

With these factors in mind, Fustok's motions to dismiss are considered, first as to *Gordon*, and second as to *Korwek*, because the two actions present different questions.

### 1) *Gordon*

■ Plaintiffs' first argument in support of a finding of good cause for untimely service is that

> the total picture presented by the repeated mailings to Fustok's admitted office address in London, Fustok's counsel's refusal to accept service, the frustrated attempts to serve Fustok on Long Island, in Kentucky, in New York and in London and the repeated refusals by Fustok's representatives to tell counsel for plaintiffs when Fustok would be in New York, or even where he could be

found for service, present all the indicia of evasion of service.[20]

This claim is unsupported. First, no reason has been shown not to believe the sworn statements of Fustok and his accountant that the two mailings sent to his London office were never received there. Second, Fustok's counsel was under no legal obligation to help plaintiffs serve their client or to tell them where Fustok could be found. Finally, the "frustrated attempts" to serve Fustok can not be attributed to any evasive action on Fustok's part, because no evidence of evasive behavior or intent has been presented.

■ Plaintiffs next contend that their numerous, good faith attempts to serve Fustok support a determination of good cause. Three of the factors discussed above support the *Gordon* plaintiffs' position: 1) the fact that when *Gordon* was filed, no 120–day limit on service existed; 2) the reasonableness of plaintiffs' first efforts to serve Fustok; and 3) the lack of prejudice to Fustok from the delay in service.

First, as discussed above, plaintiffs' failure to serve Fustok within 120 days after the filing of the action can hardly be called inadvertent or heedless when no such requirement was imposed by Rule 4 until a year after the action was filed.

Second, the *Gordon* plaintiffs made two good faith efforts to serve Fustok by mail under Rule 4(i)(1)(D) within the first six months after the action was filed. As discussed above, it cannot be concluded that these two efforts to serve were successful, because there is no indication that service was received, and Fustok and his representative have in fact sworn that service was never received. However, it is undisputed that plaintiffs took all the necessary steps to effect service under Rule 4(i)(1)(D), and the fact that service apparently was not received is not due to lack of diligence on plaintiffs' part. In sum, plaintiffs two

efforts to serve Fustok by mail were reasonable, and the failure to effect service by mail was not "the result of mere inadvertence." *Geller*, 602 F.Supp. at 502.

Third, Fustok has suffered no substantial prejudice as a result of the untimely service. It is undisputed that for years Fustok has had actual notice that he was named as a defendant in *Gordon*. Moreover, although Fustok has never submitted an answer or made a motion in the *Gordon* case, his counsel has attended most—and may have participated in at least some—of the discovery in the action. Because discovery in *Gordon* and *Korwek* has been consolidated with the discovery in *Minpeco v. ContiCommodity Service*, 81 Civ. 7619 (MEL), in which Fustok is a defendant and has been timely served, it is difficult to be sure whether Fustok's counsel intended to participate in such discovery only as it related to *Minpeco* or whether he actually participated in all three cases.[21] Indeed, it can be argued that the fact that discovery in the three silver-related actions has proceeded on a consolidated basis makes such distinctions meaningless. Furthermore, Fustok's argument that plaintiffs "lulled [him] into inaction for almost five years"[22] by their failure to serve him is not compelling. Plaintiffs' counsel have credibly represented that on several occasions he informed Fustok's counsel that he was trying to serve Fustok and sought counsel's assistance in doing so.[23] Although Fustok's counsel was not responsible to help plaintiffs serve their client, Fustok cannot now complain that he did not know that efforts were being made to serve him.

However, Fustok makes a further claim of prejudice which is more substantial. In letters submitted to the court after the announcement that a settlement had been reached with Banque Populaire Suisse in *Gordon* and *Korwek*, Fustok's counsel argues that Fustok has suffered prejudice because "[i]f Fustok had been timely

---

**20.** Plaintiffs' Memorandum at 5.

**21.** *Compare* Deutsch Affidavit at ¶¶ 41–44 *with* Fustok's Reply Memorandum at pp. 10–11.

**22.** Fustok Memorandum at 4.

**23.** Deutsch Affidavit at ¶¶ 21 and 22.

served in the *Gordon* and *Korwek* cases, he would have filed cross-claims against BPS for indemnification and contribution...." [24] Fustok argues that he did not file cross-claims against BPS because by doing so he would have waived his right to object to untimely service. In support of this proposition, Fustok cites *Merz v. Hemmerle*, 90 F.R.D. 566 (E.D.N.Y.1981), for the proposition that by filing a cross-claim a defendant may waive an otherwise timely objection to improper service.

This argument of prejudice is serious. However, it is far from clear that if Fustok had filed a pleading in *Gordon* and *Korwek*, in which he had both objected to untimely service and asserted a cross-claim against BPS, the assertion of the cross-claim alone would have been held to waive Fustok's right to object to service. In *Merz*, for instance, the defendant who was found to have waived her right to object to improper service not only had filed a cross-claim but also had obtained the court's approval to file a third-party complaint after the party against whom the cross-claim was asserted was dismissed from the case, and had waited until two years after filing her cross-claim to move to dismiss on the grounds of improper service. It was the totality of these circumstances which led the *Merz* court to conclude that the defense of improper service had been waived. *See Merz*, 90 F.R.D. at 568–69. Furthermore, the trend of recent court decisions has been toward liberally allowing parties to assert all responses in one pleading. *See Chase v. Pan-Pacific Broadcasting, Inc.*, 750 F.2d 131, 132 (D.C.Cir.1984) ("Under the Federal Rules, no answering plea is, by reason of its character, automatically repugnant to, or repellent of, any other, and no waiver or other penalty should attend combining all responses in a single pleading.") and cases cited therein. For these reasons, Fustok's argument is too speculative to establish substantial prejudice.

However, in addition to the three factors discussed above which weigh toward a determination that plaintiffs have established good cause for the tardy service in *Gordon*, several other factors weigh against such a determination. First, service was not made on Fustok until over four years after *Gordon* was filed and over three years after the effective date of the FRCPAA. The court is aware of no case in which good cause was found for untimely service under Rule 4(j) where the delay in service was so long.

Second, there is no adequate explanation for plaintiffs' failure to serve Fustok in the years which passed from the failure of their attempts to serve Fustok by mail in 1982 to the successful personal service in December, 1986. Plaintiffs have detailed five unsuccessful attempts to effect personal service on Fustok during this period: 1) at a horse farm in Louisville; 2) at Fustok's house at Muttontown, New York; 3) at the races in Florida; 4) at Fustok's London office; and 5) during the trial of *Fustok v. ContiCommodity Services, Inc.* Plaintiffs' descriptions of the first four attempts to serve are completely credible and each attempt was in and of itself reasonable. Plaintiffs' description of the fifth attempt to serve Fustok—at the *Fustok* trial—is puzzling, to say the least, because the court's personal observations of Fustok's behavior at the trial and in the courthouse contradict the allegations that Fustok behaved furtively during the *Fustok* trial. However, the court does credit plaintiffs' assertions that they believed in good faith that Fustok could not be served inside the courthouse and that, for whatever inexplicable reason, plaintiffs were unable to observe Fustok as he entered and exited the courthouse.

Yet even if there were a reasonable excuse for the failure of each of these individual attempts to serve, taken as a whole, these unsuccessful efforts to serve Fustok—all of which took place two years or more after *Gordon* was filed and more than 120 days after the effective date of Rule 4(j)—must be debited to plaintiffs' position. While Fustok may have been difficult to serve because of his constant trav-

---

24. Letter to the Court from Herbert Stoller, April 2, 1987.

el, he has been a regular visitor to the United States at predictable times and places since 1981. Furthermore, the plaintiffs in four of the other actions arising from the same series of events as *Gordon* and *Korwek,* including the *pro se* plaintiff in *Michelson v. Merrill Lynch, Pierce, Fenner & Smith,* 83 Civ. 8898(MEL) have all managed to serve Fustok.[25] In sum, although there may have been good cause for plaintiffs' failure to serve Fustok within the first year after *Gordon* was filed, there is no adequate explanation for the failure to serve from 1982 to 1986. It is also significant that plaintiffs never came to the court to explain their problems with service and seek the court's assistance. *See Norlock v. City of Garland,* 768 F.2d at 658.

For these reasons, it is determined that it would be an abuse of discretion to hold that the *Gordon* plaintiffs have "good cause" for the untimely service under Rule 4(j). This conclusion is reached with reluctance, because plaintiffs made two diligent, reasonable and timely attempts to serve Fustok and made numerous other good faith efforts to effect service on him. However, it would be highly unjust to require Fustok to continue as a defendant in this extensive litigation if in fact he has not been properly served within the requirements of Rule 4(j). Without further guidance from the court of appeals for this Circuit on the scope of the "good cause" exception, it is concluded that to find good cause in this situation would be beyond the court's discretion.

### 2) *Korwek*

■ In the *Korwek* action it is easier to conclude that there is no good cause for the delay in service and that dismissal under Rule 4(j) is appropriate. First, for the reasons discussed above, there is no evidence that Fustok evaded service. Second, in *Korwek,* which was filed on November 2, 1984, well after the Rule 4(j)'s 120-day rule

became effective, there was no attempt to serve Fustok in a timely fashion, either by mail under Rule 4(i)(1)(D) or by any other fashion. Indeed, according to plaintiffs counsel's own account, no effort was made to serve Fustok in *Korwek* until February 1986, over a year after the action was filed.[26] Because the *Korwek* plaintiffs made no efforts to serve Fustok within the 120-day period, and have not explained their failure to do so, a determination of "good cause" for failure to effect timely service would be an abuse of discretion.

### C) *Waiver*

■ Plaintiffs in both *Gordon* and *Korwek* argue that Fustok has submitted himself "irrevocably ... to the jurisdiction of [this] court" by seeking a court order which would require the *Gordon* and *Korwek* plaintiffs to reimburse Fustok for expenses Fustok incurred by paying for certain costs arising from depositions taken jointly in *Minpeco, Gordon,* and *Korwek.*[27] Plaintiffs cite *Merz* for the proposition that Fustok cannot deny the jurisdiction of the court over him on the one hand and, on the other, seek from the court affirmative relief.

Plaintiffs' claim is without merit. As discussed above, discovery in the three actions has been consolidated, and the fact that Fustok has sought reimbursement from the *Gordon* and *Korwek* plaintiffs for what is allegedly their share of the costs of consolidated discovery has simply no bearing on Fustok's current motion to dismiss in *Gordon* and *Korwek.* It certainly can not be seen as a submission by Fustok to the court's jurisdiction in these two actions.

### D. *Rule 54(b) Certification*

■ This decision will have the effect of dismissing Fustok as a defendant without prejudice under Rule 4(j) in both the *Gordon* and *Korwek* actions. For the following reasons, it is concluded that there is

---

**25.** *See* Fustok Reply Memorandum at 6–7.

**26.** Deutsch Affidavit at ¶¶ 25–27.

**27.** Letter of Herbert I. Deutsch to the Court, April 6, 1987.

no just reason for delay of an appeal of this decision, and a final judgment is directed to be entered as to Fustok pursuant to Fed.R. Civ.P. 54(b).

First, the judgment as to Fustok in *Gordon* and *Korwek* is final because it is an ultimate disposition of all of plaintiffs' claims against Fustok. Rule 4(j) provides that when a particular defendant is not served within the 120–day limit, and good cause has not been shown for untimely service, "the action shall be dismissed as to that defendant without prejudice...." However, even though the dismissal of Fustok from these actions is technically "without prejudice" to refiling, in practical effect this dismissal would appear to be final. The latest illegal act attributed to Fustok—or any defendant—in the *Gordon* and *Korwek* complaints occurred in May 1980, over seven years ago. *See Korwek* First Amended Complaint at ¶¶ 118–24 (Feb. 22, 1985); *Korwek v. Hunt,* 646 F.Supp. 953, 957 (S.D.N.Y.1986). Hence the applicable statutes of limitation have run on all claims asserted against Fustok, barring the *Gordon* and *Korwek* plaintiffs from refiling these claims against him. *See Korwek,* 646 F.Supp. at 967–973.

Second, there is no just reason for delaying the entry of a final judgment as to Fustok because considerations of judicial economy and administration tip decidedly in favor of immediate review. *See Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1 (1980). This is not a case where the adjudicated claims and the pending claims are closely related. *See Cullen v. Margiotta,* 618 F.2d 226, 228 (2d Cir.1980). The decision to dismiss Fustok as a defendant on these two actions is based solely on this court's determination that failure to do so would be an abuse of discretion under Rule 4(j) and is unrelated to the merits of plaintiffs' claims against Fustok or any of the other defendants. The appellate court will not be called upon to decide these issues twice, because Fustok is the only defendant in the two actions to have made such a motion.

Finally, delay in the entry of judgment and appeal of this decision—which turns on the interpretation of a recently amended rule of procedure on which the court of appeals for this circuit has not yet provided any guidance—would burden plaintiffs by requiring them to try their actions twice, first as to all the other defendants, and second as to Fustok alone, in the event that the decision to dismiss *Gordon* and *Korwek* as to Fustok is reversed by the court of appeals for this circuit. For these reasons, Rule 54(b) certification is justified despite the usual policy of avoiding piecemeal appeals. *See Ansam Associates, Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 445 (2d Cir.1985), and cases cited therein.

It is so ordered.