**CAMOTEX, S.R.L., Plaintiff,**

v.

**Lamar HUNT, International Metals Investment Co., Ltd., Prudential–Bache Securities, Inc., Bache Halsey Stuart Shields, Inc., Bache Group, Inc., Merrill Lynch Pierce Fenner & Smith Incorporated, Gilion Financial, Inc., Naji Robert Nahas, Sheik Mohammed Aboud Al–Amoudi, Sheik Ali Bin Mussalem, and Banque Populaire Suisse, Defendants.**

**No. 89 Civ. 3531(MEL).**

United States District Court,
S.D. New York.

July 9, 1990.

---

Alan Raywid, Margaret E. Haering, Bart M. Bukas, Cole, Raywid & Braverman, Washington, D.C., Peter N. Wang, Jessica L. Rich, Friedman, Wang & Bleiberg, P.C., New York City, for plaintiff.

Rogers & Wells, New York City, for defendant Merrill Lynch Pierce Fenner & Smith, Inc.; W.R. Glendon, Guy C. Quinlan, of counsel.

Cahill Gordon & Reindel, New York City for defendants Prudential–Bache Securities, Inc. and Prudential Securities Group, Inc.; Susan Buckley, of counsel.

Douglas L. Wald, Karen Keegan, Arnold & Porter, Washington, D.C., Robert N. Rothberg, Gilbert, Segall and Young, New York City, for defendant Banque Populaire Suisse.

LASKER, District Judge.

Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch"), and Prudential–Bache Securities, Inc. and Prudential Securities Group (collectively "Bache") move to dismiss the RICO and antitrust claims asserted by Camotex, S.R.L. ("Camotex") on the grounds that they are time-barred. Camotex alleges that the defendants conspired to monopolize and fix prices in the silver and silver futures markets in violation of the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1, 2, and 15 (1982), the Commodity Exchange Act ("CEA"), 7 U.S.C. § 13(b) (1982), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1982), and New York common law. Merrill Lynch and Bache assert that these claims are barred by the applicable four-year statute of limitations governing the antitrust and RICO claims, Section 4B of the Clayton Act, 15 U.S.C. § 15b (1982).[1] Camotex responds that, in light of the defendants' fraudulent concealment of their role in the silver market manipulation and tolling during the pendency of two actions, Zeltser v. Hunt, 80 Civ. 4009 (KTD), and Grosser v. Commodity Exchange, Inc., 84 Civ. 412 (MEL), brought on behalf of classes to which Camotex purportedly belonged, its complaint was timely filed.

Banque Populaire Suisse ("BPS") moves separately to dismiss the complaint as to it on the ground that, because it was never served in the prior Grosser action, there was no tolling as to it and the claims against it are time-barred. In answer, Camotex argues that the statute of limitations is tolled upon filing of the complaint, not from the time of service of process, and that, in any event, its efforts to effect service, along with BPS' actual notice of the claims against it, constitute sufficient cause to excuse any defects in service. For the reasons stated below, decision on Mer-

rill Lynch's and Bache's motion to dismiss is granted in part and deferred in part. BPS' motion to dismiss is granted.

I.

Camotex purchased a series of silver futures contracts on the Commodity Exchange, Inc. ("Comex"), between January 14, 1980, and March 17, 1980. Six of the contracts were closed out on the same day they were purchased, January 14, 1980. All but ten of the remaining contracts were liquidated on or before March 17, 1980. Camotex continued to hold the ten remaining contracts on March 27, 1980, when the average price of silver plummeted from $15.80 per ounce to $10.80 per ounce.[2] These contracts were finally liquidated on May 1, 1980. It is alleged that the defendants engaged in a conspiracy to monopolize the silver market. This scheme purportedly culminated in the crash of March 27, 1980, when the Hunt defendants defaulted on several of their obligations and the dramatic fall in silver prices followed. Merrill Lynch and Bache assert that Camotex's cause of action with respect to the silver conspiracy arose at the latest on March 27, 1980, and that the four-year statute of limitations began to run on that date. On January 18, 1984, the Grosser complaint was filed. It is conceded that the limitation period was tolled from January 18, 1984, until February 7, 1989, when the Grosser class was decertified. On this theory, only 69 days remained in which to file a further complaint and Camotex's claim was untimely because it was not filed until May 19, 1989, 101 days after the Grosser class decertification and 32 days after the limitations period expired.

Camotex takes the position that the statute of limitations did not begin to run until May 1, 1980, because 1) the defendants fraudulently concealed their role in the al-

---

1. Merrill Lynch and Bache originally argued that the Commodity Exchange Act and New York common law fraud claims were barred under the applicable West German statute of limitations. Following oral argument and further discovery, however, they notified the court of their decision not to pursue the motion with respect to these issues. *See* Letter from William

R. Glendon to Margaret E. Haering, dated March 24, 1990.

2. First Amended Complaint (September 1, 1989) at ¶ 56. From March 1 to March 27, 1980, the price of silver dropped from $35.20 per ounce to $10.80 per ounce.

leged conspiracy and Camotex could not have reasonably discovered its cause of action until that date; and 2) the injury Camotex suffered was not fully realized until it liquidated its remaining contracts on that date. If either of its assertions is correct, then the complaint was timely filed. Camotex argues further that the limitations period was tolled, not only during the pendency of the *Grosser* action, but also during the pendency of a second class action, Zeltser v. Hunt, 80 Civ. 4009 (KTD).

### A. *Date of Injury*

Camotex argues that its cause of action did not accrue until May 1, 1980, because its damages were not ascertainable until it liquidated the then remaining contracts. Merrill Lynch and Bache answer that Camotex's damages were provable at the latest as of the market collapse on March 27, 1980, the date of Camotex's alleged injury. Merrill Lynch and Bache argue further that, even if the precise amount of damage suffered was not known, Camotex could have estimated the amount or deferred its determination until trial.

■ In general, a cause of action accrues, for statute of limitations purposes, at the time of "injury". *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). Thus, once a plaintiff "feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him." *Id.* at 339, 91 S.Ct. at 806. A limited exception to the general rule of accrual upon injury permits tolling where the damage is speculative or unprovable as of the date of injury. *Id.* However, this exception does not apply to mere uncertainty as to the precise amount of damages. *Charlotte Telecasters, Inc. v. Jefferson–Pilot Corp.*, 546 F.2d 570, 573 (4th Cir.1976). Thus, as the *Zenith* court noted, even though a cause of action accrues upon injury, a plaintiff may recover for *"all provable damages that will flow in the future* from the acts of the conspirators on that date." 401 U.S. at 339, 91 S.Ct. at 806 (emphasis added). In sum, uncertainty as to the extent of damages

does not alone prevent accrual of a cause of action and the subsequent running of the statute of limitations.

■ Even assuming the precise amount of damages as to the last ten contracts was not known until liquidation, Camotex had an "immediate" cause of action with respect to any damages incurred up to and including the March 27, 1980 market collapse, as well as for "all provable damages that will flow in the future." *Id.* Furthermore, Camotex could have estimated the amount of damages by calculating the drop in silver prices from the purchase date to the date of the market collapse, or sought damages in an unspecified amount to be determined at trial. *See, e.g., Charlotte Telecasters*, 546 F.2d at 573.

Camotex next argues that this court found that the cause of action for all "silver cases" accrued in May 1980 in *Korwek v. Hunt*, 646 F.Supp. 953, 957 (S.D.N.Y. 1986), *aff'd*, 827 F.2d 874 (2d Cir.1987). The argument is a misstatement of the holding in that case. *Korwek*, which involved claims almost identical to those asserted in the present case, merely noted that the "latest acts attributed by the complaint to any of the defendants occurred in May 1980." *Id. Korwek* did not fix a specific date on which all antitrust claims stemming from the silver market monopoly were deemed to have accrued.

### B. *Tolling During the Pendency of Class Actions*

Camotex claims that the four-year period of limitations was tolled during the pendency of two separate class actions, Grosser v. Commodity Exchange, Inc., 84 Civ. 412 (MEL), and Zeltser v. Hunt, 80 Civ. 4009 (KTD). Merrill Lynch and Bache concede that the *Grosser* class action tolled the statute of limitations for Camotex's cause of action from January 18, 1984, the date of the *Grosser* filing, to the decertification of the class on February 7, 1989. Merrill Lynch and Bache contend, however, that the statute of limitations was not tolled during *Zeltser* because they were not given any notice regarding the number and generic identity of potential plaintiffs, as re-

quired by the tolling doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 555, 94 S.Ct. 756, 767, 38 L.Ed.2d 713 (1974).

In *American Pipe*, 414 U.S. at 552–53, 94 S.Ct. at 765–66, the Supreme Court held that, upon the commencement of a class suit, the statute of limitations is tolled for all members of the putative class. One of the purposes of the rule is to protect a defendant by allowing tolling only where the complaint notifies the defendant of the number and generic identity of potential plaintiffs who might participate in the judgment. *Id.* at 555, 94 S.Ct. at 767. *See also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628 (1983) (notice requirement is necessary to make defendant aware of "the need to preserve evidence and witnesses respecting the claims of all the members of the class").

■ Camotex argues that the statute of limitations was tolled not only in *Grosser* but for a 221–day period during the pendency of *Zeltser*, July 14, 1980, to February 20, 1981. This claim is unpersuasive. Camotex has failed to cite any authority for tolling by a "pyramiding" of class actions, that is, allowing successive class actions of which plaintiff was a putative member to toll the statute of limitations. Camotex's argument that such tolling is barred only with respect to subsequent class actions that are identical to the original class action does not establish that the rule is applicable to class actions that differ in significant respects, such as those with narrower claims. Moreover, the Supreme Court in *Crown, Cork*, 462 U.S. at 354, 103 S.Ct. at 2397 (Powell, J., concurring), suggested that the "pyramiding" of class actions, if allowable at all, should be applied with extreme caution. Nothing in the factual context of this case supports the radical proposition of "pyramiding" of class actions for tolling purposes. Tolling during successive class actions "far exceeding the applicable limitations periods" would give rise to "a situation plainly at odds with the principle of repose that statutes of limitations are designed to achieve." *Korwek,* 646 F.Supp. at 965.

■ Even if this were not so, the existence of the *Zeltser* class action would not toll the running of the statute of limitations in this case because the language of the *Zeltser* complaint is not sufficient to meet the notice provisions regarding the number and generic identity of potential plaintiffs in the action. The *Zeltser* class, comprised of "all those who purchased or held silver futures, silver bullion, or refined silver in commercial quantities", was held to be simply too "amorphous" to be eligible for class certification. *Zeltser v. Hunt*, 90 F.R.D. 65, 66 (S.D.N.Y.1981).

Camotex argues that the *Zeltser* plaintiffs' failure to define "commercial quantities" adequately applied only to purchasers of physical silver, but it is apparent that the *Zeltser* court found that this deficiency applied to the entire class, including all long and short purchasers of silver futures contracts. *Id.* at 66–67. Moreover, since, as the *Zeltser* court noted, the class was so amorphous as to make it impossible to "limit potential class members" and to determine whether plaintiffs could "adequately represent the interests of the class", the class complaint does not meet the "notice" requirements of *Crown, Cork. Zeltser,* 90 F.R.D. at 67. It would be contrary to the *American Pipe* doctrine to hold that class complaints asserting the generalized grievances of an open-ended group alert the defendant to the identity of those likely to participate in the action against him. *See, e.g., Davis v. Bethlehem Steel Corp.*, 600 F.Supp. 1312, 1319 (D.Md.), *aff'd*, 769 F.2d 210 (4th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 573, 88 L.Ed.2d 557 (1985) (excessively broad class complaint alleging generalized racial discrimination claims does not satisfy notice requirements of *American Pipe* ). By including "everybody" in the class—short traders, long traders, physical traders, consumers, and purchasers of products containing silver—the complaint failed to give Merrill Lynch and Bache adequate notice to prepare a defense against a subgroup's specialized grievances. *Zeltser* 's "generalized laundry list", *Davis v.*

*Bethlehem Steel,* 600 F.Supp. at 1318, did not provide Merrill Lynch and Bache with the kind of fair notice that is required by the tolling doctrine. Accordingly, the statute of limitations was not tolled during the pendency of the *Zeltser* action.

### C. *Fraudulent Concealment*

■ Camotex contends that the period of limitation was further tolled by Merrill Lynch and Bache fraudulently concealing the facts relating to the alleged conspiracy. Merrill Lynch and Bache deny any fraudulent concealment on their part, but argue that, in any event, all the facts relating to the silver market and Camotex's claim in this case were publicly known by March 27, 1980, and that, because Camotex knew these facts or should have known them, the defense of fraudulent concealment fails. In this connection, Merrill Lynch and Bache have submitted evidence consisting of public reports and press clippings from a variety of newspapers. The submission of that evidence as a practical matter converts the motion—as to the fraudulent concealment issue—from a motion to dismiss to a motion for summary judgment. Accordingly, the question raised by the submission of such evidence is whether or not a genuine issue of material fact exists as to whether Camotex knew or should have known the facts necessary to present its case at the time of the publicity referred to by Merrill Lynch and Bache in their brief.

Although Camotex had the opportunity to present opposing evidence in its "Supplemental Brief" submitted on November 17, 1989, it has not done so. An examination of the papers results in the conclusion that this issue should be treated as a motion for summary judgment. However, since Merrill Lynch and Bache have never served any notice of a motion for summary judgment, but have simply, on an informal basis, referred to this issue as such in their reply briefs, and the court has never designated it as a motion for summary judgment in accordance with the provisions of Rule 12(b) of the Federal Rules of Civil Procedure, decision is deferred for a period of thirty days in which to afford Camotex the opportunity to submit any opposing evidence and supporting memoranda relating solely to the significance of such evidence. Thereafter, Merrill Lynch and Bache shall have a period of two weeks to submit answering papers.

In sum, the date of injury to Camotex is determined to be March 27, 1980. The statute of limitations was tolled during the pendency of Grosser v. Commodity Exchange, Inc., 84 Civ. 412 (MEL), but not Zeltser v. Hunt, 80 Civ. 4009 (KTD). Determination as to the issue of fraudulent concealment is deferred.

## II. BPS' MOTION TO DISMISS

BPS moves to dismiss on the ground that it was not served in the *Grosser* class action and that, as a result, the statute of limitations was not tolled during the pendency of that action and Camotex's claims in the present action are time-barred. Camotex answers that the statute of limitations with respect to its claims against BPS was tolled upon the filing of the *Grosser* complaint on January 18, 1984, and that tolling does not depend upon service of process. In any event, Camotex says its efforts to serve BPS in the *Grosser* action, as well as BPS' actual notice of the litigation, should excuse the failure to complete service.

■ A statute of limitations is normally tolled upon the filing of the complaint. *Bomar v. Keyes,* 162 F.2d 136, 140–41 (2d Cir.), *cert. denied,* 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947). *See also Salahuddin v. Harris,* 657 F.Supp. 369, 374 (S.D.N.Y.1987); *United States v. Jack Cozza, Inc.,* 106 F.R.D. 264, 268 (S.D.N.Y. 1985); *Textile Museum v. F. Eberstadt & Co., Inc.,* 453 F.Supp. 72, 74–75 (S.D.N.Y. 1978). The rule does not apply, however, to cases involving undue delays in service which have "the effect of negating the fact that a complaint was ever filed". *Gleason v. McBride,* 869 F.2d 688, 691 (2d Cir.1989) (action properly dismissed as untimely where plaintiff waited 44 months after filing of original complaint to serve defendant). The theory of these decisions is that, where a defendant has never been served with process, no action against that

defendant has been commenced and the statute of limitations continues to run. *Id.* at 691. *See also Derdiarian v. Futterman Corp.*, 36 F.R.D. 192, 194 (S.D.N.Y. 1964) (filing of complaint commences action provided there is not undue delay). Indeed, failure of service has been held even to nullify the filing of the complaint. *Application of the Royal Bank of Canada*, 33 F.R.D. 296, 299–303 (S.D.N.Y.1963).

■ Camotex argues that Grosser's "repeated" attempts to serve BPS by registered mail in the first few months of the *Grosser* class action constitute "good cause" to excuse untimely service under Fed.R.Civ.P. 4(j). However, although Grosser's initial attempts to serve BPS may indeed have been reasonable and timely, Camotex offers no justification for the utter abandonment of these efforts, except the pendency of multiple motions to dismiss which might have disposed of the action. But, while the pendency of such motions may explain, it does not justify the discontinuance of actions to serve BPS. After the first "several months" of the *Grosser* action, no further attempts to serve BPS were made until after the *Grosser* class was decertified and the present action was filed—a delay of five years.[3] Such a checkered history simply does not attain the level of diligence required under the "good cause" exception. *See, e.g., Gordon v. Hunt*, 116 F.R.D. 313, 325 (S.D.N.Y.), *aff'd*, 835 F.2d 452 (2d Cir.1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1734, 100 L.Ed.2d 198 (1988) (untimely service not excused for good cause where plaintiff made five attempts to serve defendant and then ceased its efforts during the remaining four years of the action).

The record establishes that there was no unusual obstacle to service. In fact, plaintiffs in a number of other "silver cases" all managed to serve BPS without difficulty. *See, e.g.,* Strax v. Commodity Exchange, Inc., 79 Civ. 5366 (MEL); Fustok v. Banque Populaire Suisse, 81 Civ. 4139 (EW); Minpeco v. ContiCommodity Services, Inc., 81

Civ. 7619 (MEL); Gordon v. Hunt, 82 Civ. 1318 (MEL); Korwek v. Hunt, 84 Civ. 7934 (MEL). Moreover, neither Grosser nor Camotex ever "came to the court to explain their problems with service and seek the court's assistance." *Gordon*, 116 F.R.D. at 325. Thus, in view of the ample time and opportunity afforded Grosser to serve BPS, the undue delay in service had "the effect of negating the fact that a complaint was ever filed." *Gleason*, 869 F.2d at 691.

■ Camotex also contends that Grosser's failure to serve BPS should be ignored because, since BPS had actual notice of the claims against it, it would suffer no prejudice by being held as a defendant in this case. Actual notice, however, is no substitute for valid service of process. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir.1978) (defendant's actual knowledge of an action is not sufficient to deny motion to dismiss for failure to serve); *Gordon v. Hunt*, 116 F.R.D. at 323 (a delay in service could not be excused despite the defendant's awareness that he had been named a defendant). Thus, although actual notice on the part of BPS is certainly a factor to consider in determining whether or not to excuse the incomplete service, it is simply not determinative in light of the five-year period during which all attempts at service were abandoned.

■ Moreover, the absence of prejudice, even if such were the case, is not determinative in matters such as this, where the sheer length of the delay is sufficient grounds for dismissal. *See, e.g., Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance et d'Armement*, 508 F.2d 814, 815 (2d Cir.1974) ("unreasonable delay in service constitute[s] grounds for dismissal without regard to any showing of actual prejudice"); *Gordon v. Hunt*, 116 F.R.D. at 323 (motion to dismiss granted due to a four-year delay in service despite finding that defendant was not substantial-

---

**3.** *See* Camotex's Opposition to Motions to Dismiss (September 1, 1989), Exhibit 6, Affidavit of

Welles C. Hatch, dated August 30, 1989, at ¶ 5.

1094

ly prejudiced). In the present case, the five-year delay in serving BPS is sufficient to constitute grounds for dismissal without the need to show prejudice.

 In any event, BPS did in fact suffer prejudice as a result of the five-year delay in service of process. It has often been held that a defendant is prejudiced where "witnesses have died or become unavailable" during the time from the filing of the complaint to the service of process upon the defendant. *Saylor v. Lindsley,* 71 F.R.D. 380, 385 (S.D.N.Y.1976), *aff'd,* 623 F.2d 230 (2d Cir.1980). A number of BPS officials with potentially relevant knowledge have died or left the organization, thereby adding to BPS' potential difficulties in defending against Camotex's present claims. These officials were undoubtedly potential witnesses because most were deposed or notified that they were to be deposed in Minpeco v. ContiCommodity Services, Inc., 81 Civ. 7619 (MEL), and Gordon v. Hunt, 82 Civ. 1318 (MEL).[4] Camotex argues further that BPS' failure to object to improper service during the *Grosser* action constitutes a waiver of the defense of insufficiency of process. However, having never been made a defendant to the *Grosser* action because of failure of service, BPS was under "no obligation to do anything", let alone make a motion to dismiss. *Finley v. Parvin/Dohrmann Co., Inc.,* 520 F.2d 386, 391 (2d Cir.1975). The Second Circuit rejected a similar argument in *Gleason v. McBride,* 869 F.2d at 692, ruling that, despite defendant's failure to move to dismiss based on improper service, the court could order dismissal *sua sponte* without giving notice to the parties.

Camotex's final argument is that tolling the statute of limitations as to its claims against BPS is consistent with the policies underlying limitations periods and therefore should be allowed. However, in *Cullen v. Margiotta,* 811 F.2d 698, 726 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), the Second Circuit held that the class action tolling

doctrine is "inapplicable to persons who were not defendants, since commencement of a suit against others is insufficient to give a nondefendant notice of the assertion of claims against him." BPS was never made a defendant to the *Grosser* class action by virtue of the complete failure to serve BPS with process. Thus, Camotex's assertion that BPS had actual notice of the claims against it is not sufficient to toll the statute of limitations during the pendency of the *Grosser* class action.

Merrill Lynch's and Bache's motion to dismiss is granted to the extent of determining that the date of injury is March 27, 1980 and the statute of limitations is tolled during the pendency of the *Grosser* action, but not the *Zeltser* action. Decision on the issue of fraudulent concealment is deferred. BPS' motion to dismiss is granted.

---

**4.** *See* Supplemental Verified Statement of Hans–Rudolf Renfer, Esquire (September 12, 1989) at ¶ 5.