William J. HIGGINS, Plaintiff,

v.

NEW YORK STOCK EXCHANGE, Defendant.

No. 90 Civ. 4069 (RWS).

United States District Court, S.D. New York.

Feb. 1, 1991.

**114**

Laventhall & Zicklin (Robert Zicklin, James Niss, of counsel), New York City, for plaintiff.

Milbank, Tweed, Hadley & McCloy (Russell E. Brooks, Charles Westland, of counsel), New York City, for defendant.

## OPINION

SWEET, District Judge.

Defendant New York Stock Exchange ("NYSE") moves to dismiss the complaint on the grounds that the action is time-barred by the statute of limitations. For the following reasons, the motion is granted.

### The Parties

NYSE is a New York corporation which operates as a securities exchange, providing a market for the trading of securities. Plaintiff William J. Higgins ("Higgins") is a member of NYSE who operates as an independent broker, executing orders on the floor of NYSE as an agent for others.

### The Facts

In 1981, Higgins sought permission from NYSE to install an unrestricted business telephone line in his booth on the NYSE floor. At the time, NYSE allowed only restricted lines on the NYSE floor, ostensibly for the purpose of preventing large institutional investors from being able to tie up any direct phone lines to the floor and thereby gain an edge over smaller investors. Higgins alleges that such a phone line would have allowed him to communicate directly with non-NYSE-members, thereby allowing him to compete with other members for their customers. In keeping with its then policy, NYSE denied Higgins request.

In 1984, Higgins again sought permission to have an outside line connected to his booth. This time, Higgins also requested permission to have the new line connected to a cordless telephone, which he could carry with him while he was away from his booth on the trading floor. Again NYSE rejected Higgins' request. Higgins appealed this decision to NYSE's board of directors, which affirmed the rejection on March 7, 1985.

Higgins next sought review before the Securities and Exchange Commission ("SEC"), which vacated NYSE's decision in May, 1987, on a finding that NYSE had no specific rules which prevented it from ap-

proving Higgins' request. NYSE respond-
ed by proposing a rule to prohibit portable
telephones on the trading floor; the rule
was approved by the SEC in 1988, and the
decision was affirmed on appeal in *Higgins
v. SEC*, 866 F.2d 47 (2d Cir.1989).

On June 15, 1990, Higgins filed this ac-
tion alleging that NYSE's denials of his
requests for a telephone in his booth consti-
tuted a conspiracy to violate the Sherman
Act, 15 U.S.C. § 1. The alleged conspiracy
involves the efforts of NYSE and various
NYSE members to prevent Higgins from
competing with other NYSE members by
preventing him from communicating with
non-member customers from his booth.
Higgins also contends that an object of the
conspiracy was the fraudulent concealment
of the fact that NYSE had no intention of
giving fair consideration to any of Higgins
requests for a telephone line in his booth.
Higgins seeks treble damages under § 4 of
the Clayton Act, 15 U.S.C. § 15.

*Discussion*

1.  The statute of limitations was not
    tolled by the SEC proceedings.

■ NYSE moves to dismiss on the
grounds that Higgins action is barred by
the four-year statute of limitations applica-
ble to an action under the Clayton Act,
contained in § 4B, 15 U.S.C. § 15b. NYSE
contends that, because Higgins' complaint
deals with events which occurred prior to
June 15, 1986—four years before the filing
of the complaint—his action is time-barred.
Higgins counters that his instigation of the
administrative proceedings with the SEC
tolled the statute until those proceedings
were completed in 1987.

Higgins relies on *Ricci v. Chicago Mer-
cantile Exchange*, 409 U.S. 289, 93 S.Ct.
573, 34 L.Ed.2d 525 (1973) and *Mt. Hood
Stages, Inc. v. Greyhound Corp.*, 616 F.2d
394 (9th Cir.), *cert. denied*, 449 U.S. 831,
101 S.Ct. 99, 66 L.Ed.2d 36 (1980) to sup-
port his contention that the statute of limi-
tations was tolled during the pendency of
the SEC proceedings. In *Ricci*, the Su-
preme Court held that antitrust proceed-
ings against the defendant Chicago Mer-
cantile Exchange should be stayed pending
administrative proceedings before the Com-

modity Exchange Commission ("CEC"), be-
cause certain issues were within the CEC's
jurisdiction and its resolution of those is-
sues was essential to the antitrust claim.
409 U.S. at 304–05, 93 S.Ct. at 581–82. In
*Mt. Hood*, the Ninth Circuit held that
where an administrative proceeding was a
prerequisite to the plaintiff's antitrust suit
the statute of limitations would be tolled
during the proceeding. Higgins argues
that *Ricci* implies that his SEC proceeding
was in fact a prerequisite to his antitrust
claim, and that *Mt. Hood* therefore pro-
vides that the limitations period was tolled
during the SEC proceeding.

However, in *Ricci* the plaintiff had filed
a timely antitrust action and the defendant
had moved to dismiss. This motion was
denied, but the case was stayed pending
the outcome of the CEC proceedings. Be-
cause the defendant had timely notice of
the plaintiff's claims, there was little preju-
dice from delaying the suit while the CEC
ruled on the dispute. In the present case,
on the other hand, NYSE had no knowl-
edge or reason to know that Higgins in-
tended to bring an antitrust suit until well
after the limitations period had expired.
Higgins cannot avail himself of the fact
that NYSE might have obtained a stay
during the SEC proceeding, particularly
where there is no evidence that NYSE
would in fact have done so.

Higgins' reliance on *Mt. Hood* overlooks
subsequent Ninth Circuit authority which
has limited that case to the particular situa-
tion in which a plaintiff's antitrust claim
cannot go forward until the administrative
proceeding has been completed. For exam-
ple, in *Community Electric Service of Los
Angeles, Inc. v. National Electrical Con-
tractors Association, Inc.*, 869 F.2d 1235
(9th Cir.1989), the court refused to toll the
antitrust limitations period during the
pendency of the plaintiff's NLRB proceed-
ings, because those proceedings were re-
quired neither by federal policy considera-
tions nor by the doctrine of primary juris-
diction. In distinguishing *Mt. Hood*, the
*Community Electric* court commented
"Here, the NLRB proceedings did not toll
the limitations period since prior resort to

the Board was not a prerequisite to review in federal court." 869 F.2d at 1241. *See also Brunswick Corp. v. Riegel Textile Corp.,* 752 F.2d 261, 270 (7th Cir.1984) (patent-interference proceeding did not toll statute as Patent Office lacked primary jurisdiction over question of patent validity), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985).

Similarly, Higgins has not referred to any requirement that he seek SEC review prior to bringing his claim against NYSE. Nor has he identified any federal policy which would be served by tolling the statute of limitations. His complaint alleges that as early as 1978 the SEC had at least suggested that NYSE could not limit the telephone access of its members without an explicit rule authorizing it to do so. However, such a suggestion did not in any way inhibit Higgins from filing his claim within the statutory time period.

In addition, although Higgins contends that filing his antitrust claims prior to the resolution of the SEC proceedings would have been "sheer formality," because the suit would have been stayed pending the outcome of those proceedings under *Ricci,* this argument presupposes that NYSE would have sought such a stay. Higgins also overlooks the fact that this "formality" would at least have served to give NYSE timely notice of his claims, even if the suit was subsequently stayed. "To allow the statute of limitations to be tolled on the basis of a defense that might be raised if the suit were filed on time is unconventional...." *Brunswick Corp.,* 752 F.2d at 269.

2. Higgins' damages were not so speculative that he could not have sued in a timely manner.

█ Alternatively, Higgins argues that under *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), his cause of action did not accrue until he was able to install a telephone (as a result of the SEC's 1987 directive) because prior to that time he could not measure the damages which he had suffered by the alleged unlawful refus-

al to approve his earlier applications. The general rule, as articulated in *Zenith* is that

> if a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future from the acts of the conspirators on that date. To recover those damages, he must sue within the requisite number of years from the accrual of the action.

401 U.S. at 339, 91 S.Ct. at 806. The exception created in *Zenith* applies only in the very limited circumstances in which the damages are so speculative that a court would be unwilling to entertain an estimate of their magnitude. *See Brunswick Corp.,* 752 F.2d at 270–71; *Camotex, S.R.L. v. Hunt,* 741 F.Supp. 1086 (S.D.N.Y.1990). Mere uncertainty as to the precise amount of damages is insufficient to toll the statute. *Camotex,* 741 F.Supp. at 1090.

█ In the present case, there is little doubt that NYSE's refusal to permit Higgins to install a telephone had an adverse impact on his business, in that it reduced his ability to contact customers. The fact that the damages might have been difficult to calculate would not have prevented Higgins from bringing his claim in a timely fashion, and cannot preserve his untimely claim here. "Exclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs ..., even though, in the nature of things, the victim's losses lie mostly in the future." *Brunswick Corp.,* 752 F.2d at 271.

*Conclusion*

For the foregoing reasons, Higgins' antitrust claim against NYSE is barred by the statute of limitations, and the complaint is therefore dismissed.

It is so ordered.